1  **JOSEPH M. McMULLEN**
   California State Bar No. 246757
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5030
   Telephone:  (619) 234-8467
4  Email: Joseph_McMullen@fd.org

5  Attorneys for Mr. Ortega-Rocha

6

7                        UNITED STATES DISTRICT COURT

8                      SOUTHERN DISTRICT OF CALIFORNIA

9                       (**HONORABLE IRMA E. GONZALEZ**)

10  UNITED STATES OF AMERICA,        )   CASE NO.  07CR3054-IEG
                                     )
11            Plaintiff,             )   DATE: January 7, 2008
                                     )   TIME:   2:00 p.m.
12  v.                               )
                                     )   STATEMENT OF FACTS AND
13  **JORGE ORTEGA-ROCHA (1),**      )   MEMORANDUM OF POINTS AND
                                     )   AUTHORITIES IN SUPPORT OF
14  ALBERTO MINOR-OLVERA (2),        )   DEFENDANT'S MOTIONS
                                     )
15            Defendants.            )
    _____)

16                                 **I.**

17                        **STATEMENT OF FACTS**

18        On October 27, 2007, at approximately 9:33 a.m., a Border Patrol agent observed a red four-

19  door sedan make a U-turn on Old Highway 80 near Jacuma, California.  The agent lost sight of the

20  vehicle, and thereafter saw an individual running southbound on foot.  Another agent located the

21  vehicle and conducted a registration check, which indicated that the vehicle was misplated.  The

22  agent initiated a vehicle stop and the driver, Mr. Ortega-Rocha, yielded immediately.

23        Mr. Ortega-Rocha was removed from the vehicle and handcuffed, while the three individuals

24  in the passenger compartment of the vehicle remained in the vehicle.  The agents opened the trunk

25  of the vehicle and discovered two individuals inside.  The individuals in the trunk, and two of the

26  passengers were questioned and admitted to being undocumented aliens.

27        On November 9, 2007, a Indictment was returned in the Southern District of California

28  charging Mr. Jorge Ortega-Rocha and Mr. Alberto Minor-Olvera with bringing in three

1  undocumented aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C.

2  § 2, and transportation of three undocumented aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and

3  (v)(II).  On November 13, 2007, the Court arraigned both defendants on the on indictment and each

4  entered a not guilty plea.  The Court held a motion setting date on November 19, 2007. A motion

5  hearing was scheduled for January 7, 2008.

6                                              **II.**

7                    **THIS COURT SHOULD ORDER PRESERVATION OF**
                     **EVIDENCE AND PRODUCTION OF DISCOVERY**
8

9          Mr. Ortega-Rocha moves for the production by the government of the following discovery

10  and for the preservation of evidence.  This request is not limited to those items that the prosecutor

11  knows of, but rather includes all discovery listed below that is in the custody, control, care, or

12  knowledge of any government agency.  See generally Kyles v. Whitley, 514 U.S. 419 (1995); United

13  States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

14          (1)  The Defendant's Statements.  The Government must disclose to the defendant all copies

15  of any written or recorded statements made by the defendant; the substance of any statements made

16  by the defendant which the Government intends to offer in evidence at trial; any response by the

17  defendant to interrogation; the substance of any oral statements which the Government intends to

18  introduce at trial and any written summaries of the defendant's oral statements contained in the

19  handwritten notes of the Government agent; any response to any Miranda warnings which may have

20  been given to the defendant; as well as any other statements by the defendant.  FED. R. CRIM. P.

21  16(a)(1)(A) and 16(a)(1)(B).  The Advisory Committee Notes and the 1991 amendments to Rule 16

22  make clear that the Government must reveal all the defendant's statements, whether oral or written,

23  regardless of whether the government intends to make any use of those statements.

24          (2)  Arrest Reports, Notes and Dispatch Tapes.  The defense also specifically requests that

25  all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding

26  his arrest or any questioning, if such reports have not already been produced in their entirety, be

27  turned over to him.  This request includes, but is not limited to, any rough notes, records, reports,

28  transcripts or other documents in which statements of the defendant or any other discoverable

1   material is contained.  This is all discoverable under FED. R. CRIM. P. 16(a)(1)(A); 16(a)(1)(B) and

2   Brady v. Maryland, 373 U.S. 83 (1963).  See also Loux v. United States, 389 F.2d 911 (9th Cir.

3   1968).  Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn

4   statements, and prosecution reports pertaining to the defendant are available under FED. R. CRIM. P.

5   16(a)(1)(E) and FED. R. CRIM. P. 26.2.  Preservation of rough notes is requested, whether or not the

6   government deems them discoverable.

7         (3) Brady Material.  Mr. Ortega-Rocha requests all documents, statements, agents' reports,

8   and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the

9   credibility of the government's case.  Impeachment as well as exculpatory evidence falls within

10   Brady's definition of evidence favorable to the accused.  United States v. Bagley, 473 U.S. 667

11   (1985); United States v. Agurs, 427 U.S. 97 (1976).

12         (4) Any Information That May Result in a Lower Sentence Under The Guidelines.  As

13   discussed above, this information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963).

14   This request includes any cooperation or attempted cooperation by the defendant, as well as any

15   information that could affect any base offense level or specific offense characteristic under Chapter

16   Two of the Guidelines.  Also included in this request is any information relevant to a Chapter Three

17   adjustment, a determination of the defendant's criminal history, or any other application of the

18   Guidelines.

19         (5) The Defendant's Prior Record.  Evidence of prior record is available under FED. R. CRIM.

20   P. 16(a)(1)(D).  Counsel specifically requests a complete copy of any criminal record.

21         (6) Any Proposed 404(b) Evidence.  Evidence of prior similar acts is discoverable under

22   FED. R. EVID. 404(b) and 609.  In addition, under FED. R. EVID. 404(b), "upon request of the

23   accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general

24   nature . . ." of any evidence the government proposes to introduce under FED. R. EVID. 404(b) at trial.

25   Mr. Ortega-Rocha requests that notice be given at least three weeks before trial in order to give the

26   defense time to adequately investigate and prepare for trial.

27         (7) Evidence Seized.  Evidence seized as a result of any search, either warrantless or with

28   a warrant, is discoverable under FED. R. CRIM. P. 16(a)(1)(E).

                07CR3054-IEG

1   (8) <u>Request for Preservation of Evidence</u>. The defense specifically requests that all dispatch

2   tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the

3   possession, custody, or care of the government and which relate to the arrest or the events leading

4   to the arrest in this case be preserved. This request includes, but is not limited to, all individuals

5   discovered in the vehicle, the results of any fingerprint analysis, the defendant's personal effects, the

6   vehicle, and any other evidence seized from the defendant or any third party. It is requested that the

7   government be ordered to <u>question</u> all the agencies and individuals involved in the prosecution and

8   investigation of this case to determine if such evidence exists, and if it does exist to inform those

9   parties to preserve any such evidence.

10   (9) <u>Tangible Objects</u>. The defense requests, under FED. R. CRIM. P. 16(a)(1)(E) the

11   opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects,

12   including photographs, books, papers, documents, photographs of buildings or places or copies of

13   portions thereof which are material to the defense or intended for use in the government's

14   case-in-chief or were obtained from or belong to the defendant.

15   (10) <u>Evidence of Bias or Motive to Lie</u>. The defense requests any evidence that any

16   prospective government witness is biased or prejudiced against the defendant, or has a motive to

17   falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States</u>

18   <u>v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988); <u>Hayes v. Brown</u>, 399 F.3d 972, 986 (9th Cir. 2005) (en

19   banc) ("The jury's estimate of the truthfulness and reliability of a given witness may well be

20   determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the

21   witness in testifying falsely that a defendant's life or liberty may depend."). **Specifically, Mr.**

22   **Ortega-Rocha requests copies of any conviction or deportation/removal documents relating**

23   **to the material witnesses in this case. Mr. Ortega-Rocha also requests disclosure of any deals,**

24   **promises, or policies regarding the prosecution of material witnesses and co-defendants.**

25   (11) <u>Impeachment evidence</u>. Mr. Ortega-Rocha requests any evidence that any prospective

26   government witness has engaged in any criminal act whether or not resulting in a conviction and

27   whether any witness has made a statement favorable to the defendant. <u>See</u> FED. R. EVID. 608, 609

28   and 613. Such evidence is discoverable under <u>Brady v. Maryland</u>, <u>supra</u>. <u>See United States v.</u>

1    Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d

2    49 (9th Cir. 1965) (evidence that detracts from a witness' credibility). **Specifically, Mr. Ortega-**

3    **Rocha requests copies of any conviction or deportation/removal documents relating to the**

4    **material witnesses in this case.**

5         (12) Evidence of Criminal Investigation of Any Government Witness. The defense requests

6    any evidence that any prospective witness is under investigation by federal, state or local authorities

7    for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

8         (13) Evidence Affecting Perception, Recollection, Ability to Communicate. Mr. Ortega-

9    Rocha requests any evidence, including any medical or psychiatric report or evaluation, tending to

10   show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is

11   impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or

12   has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988); Chavis v. North

13   Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

14        (14) Witness Addresses. The defense requests the names and last known address of each

15   prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United

16   States v. Tucker, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel

17   is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979)) (defense has equal right

18   to talk to witnesses). The defendant also requests the names and last known address of every witness

19   to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will

20   not be called as a government witness. United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984).

21        (15) Names of Witnesses Favorable to the Defendant. Mr. Ortega-Rocha requests the names

22   of any witness who made any arguably favorable statement concerning the defendant or who could

23   not identify him or who was unsure of his identity, or participation in the crime charged. Jackson

24   v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir.

25   1980); Jones v. Jago, 575 F.2d 1164, 1168 (6th Cir.), cert. denied, 439 U.S. 883 (1978); Hudson v.

26   Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980).

27        (16) Statements Relevant to the Defense. Mr. Ortega-Rocha requests disclosure of any

28   statement that may be "relevant to any possible defense or contention" that he might assert. United

1    States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982).

2    (17) Jencks Act Material. The defense requests all material to which Mr. Ortega-Rocha is

3    entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial or deposition,

4    including dispatch tapes. Advance production will avoid needless delays at pretrial hearings and at

5    trial. This request includes any "rough" notes taken by the agents in this case; these notes must be

6    produced pursuant to 18 U.S.C. § 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92

7    (1963). This request also includes production of transcripts of the testimony of any witness before

8    the grand jury. See 18 U.S.C. § 3500(e)(3).

9    (18) Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the

10   defendant requests all statements and/or promises, expressed or implied, made to any government

11   witnesses, in exchange for their testimony in this case, and all other information which could

12   arguably be used for the impeachment of any government witnesses. Any deal between the

13   government and the government witnesses must be disclosed, even if the witness is unaware of the

14   deal. See Hayes, 399 F.3d 972 (reversing conviction where secret deal between prosecutor and

15   witness' attorney was not disclosed to the jury, even though witness himself was unaware of the

16   deal). **Mr. Ortega-Rocha respectfully requests disclosure of any deals, statements or promises**

17   **(express or implied) made by the government regarding the material witnesses or co-**

18   **defendants in this case, as well as any government policies regarding the non-prosecution or**

19   **non-deportation of material witnesses in general.**

20   (19) Reports of Scientific Tests or Examinations. Pursuant to FED. R. CRIM. P. 16(a)(1)(F),

21   the defendant requests the reports of all tests and examinations conducted upon the evidence in this

22   case. Including, but not limited to, any fingerprint testing done upon any evidence seized in this

23   case, that is within the possession, custody, or control of the government, the existence of which is

24   known, or by the exercise of due diligence may become known, to the attorney for the government,

25   and which are material to the preparation of the defense or are intended for use by the government

26   as evidence in chief at the trial.

27   (20) Henthorn Material. The defense requests that the prosecutor review the personnel files

28   of the officers involved in his arrest, and those who will testify, and produce to him any exculpatory

information at least three weeks prior to trial and one week prior to the motion hearing. See United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). In addition, he requests that if the government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an in camera inspection.

(21) Informants and Cooperating Witnesses. Mr. Ortega-Rocha requests disclosure of the addresses of all informants or cooperating witnesses used or to be used in this case. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). Mr. Ortega-Rocha also requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include inducements, favors, payments, or threats made to the witness to secure cooperation with the authorities.

(22) Expert Witnesses. The defendant requests disclosure of any expert witnesses the government intends to call at trial and "a written summary of testimony that the government intends to use," including the "witnesses' opinions, the bases and the reasons for those opinions" and his or her qualifications. FED. R. CRIM. P. 16(a)(1)(G).

(23) Residual Request. The defense intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Ortega-Rocha requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial.

**III.**

**MR. ORTEGA-ROCHA'S CASE SHOULD BE SEVERED FROM HIS CO-DEFENDANT'S TO AVOID UNFAIR PREJUDICE AT TRIAL**

**A.    Introduction**

Mr. Ortega-Rocha's rights to due process and a fair trial require that his trial be severed from the trial of his co-defendant.

1    Rule 14(a) provides for the severance of defendants under certain conditions:

2    [i]if the joinder of offenses or defendants in an indictment, an information, or a
3    consolidation for trial appears to prejudice a defendant..., the court may order separate
     trials of counts, sever the defendant's trials, or provide any other relief that justice
4    requires.

5    Fed. R. Crim. P. 14 (2007). Although a motion for severance is addressed to the trial court's

6    discretion, see, e.g., United States v. Seifert, 648 F.2d 557, 563 (9th Cir. 1980), the granting of such

7    a severance is warranted when there is a serious risk that a joint trial would compromise a specific

8    trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt

9    or innocence. United States v. Mayfield, 189 F.3d 895, 899 (9th Cir. 1999) (quoting United States

10   v. Zafiro, 560 U.S. 534, 539 (1993)); United States v. Tootick, 952 F.2d 1078, 1083 (9th Cir. 1991).

11   **B.    The Trial of Mr. Ortega-Rocha Should be Severed Due to Prejudicial Joinder.**

12   Rule 14 of the Federal Rules of Criminal Procedure requires severance or other relief

13   whenever a defendant may be prejudiced by joinder of defendants in an indictment or by joinder for

14   trial altogether. See United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980); United States

15   v. Lutz, 621 F.2d 940, 945 (9th Cir. 1980); United States v. Tousant, 619 F.2d 810, 813 (9th Cir.

16   1980). A decision to sever multiple co-defendants' cases remains within the trial court's discretion.

17   See United States v. Doe, 655 F.2d 920, 926 (9th Cir. 1980); United States v. Seifert, 648 F.2d 557,

18   563 (9th Cir. 1980). To warrant the issuance of a severance, the defendant must demonstrate that

19   a joint trial is "so manifestly prejudicial that it outweighs the dominant concern with judicial

20   economy and compels the exercise of the court's discretion to sever." Doe, 655 F.2d at 926 (citations

21   omitted). See also Zafiro, 506 U.S. at 539.

22   A joint trial would greatly prejudice Mr. Ortega-Rocha for four reasons. First, Mr. Ortega-

23   Rocha and his co-defendant will offer irreconcilable, mutually exclusive defenses. Second, Mr.

24   Ortega-Rocha will be denied access to the exculpatory testimony of co-defendant Mr. Minor-Olvera,

25   who he would be able to call to testify at a separate trial. Third, Mr. Ortega-Rocha will be denied

26   his Sixth Amendment rights of the Confrontation Clause and cross-examination. Finally, if tried

27   together with the co-defendants, especially Mr. Munoz, the jury may wrongly find Mr. Ortega-Rocha

28   guilty by association, impinging on Mr. Ortega-Rocha' Due Process Rights. Because of the

1    foregoing reasons, Mr. Ortega-Rocha's case must be severed from that of his co-defendant.

2        **1.    Without Severance, the Defendants Will Offer Mutually Exclusive Defenses**

3        Severance may be granted where the defendant "[shows] that the core of the codefendant's

4    defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's

5    theory by the jury precludes acquittal of the defendant." United States v. Throckmorton, 87 F.3d

6    1069, 1072 (9th Cir. 1996).

7        The Ninth Circuit has recognized that "'[t]he prototypical example is a trial in which each of

8    two defendants claims innocence, seeking to prove instead that the other committed the crime.'"

9    United States v.Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991) (citing United States v. Holcomb, 797

10   F.2d 1320, 1324 (5th Cir.1986)). Mutual exclusivity also may exist when "only one defendant

11   accuses the other, and the other denies any involvement." Tootick, 952 F.2d at 1081 (citing United

12   States v. Romanello, 726 F.2d 173, 177 (5th Cir. 1984)). See also United States v. Mayfield, 189

13   F.3d 895, 899-900 (9th Cir. 1999).  For example, in Tootick, co-defendants Mr.  Tootick and Mr.

14   Frank each claimed that the other acted alone in stabbing Mr. Hart, the victim. Tootick, 952 F.2d

15   at 1081. There was no dispute that all three men were present at the scene, and that Mr. Hart did not

16   injure himself. Id. Mr. Frank testified that he watched in horror as Mr. Tootick stabbed Mr. Hart.

17   Id. Mr. Tootick, who did not testify, presented a defense that he passed out or was asleep throughout

18   the episode.  Id. Thus, their defenses contradicted each other such that "the acquittal of one

19   [necessitated] the conviction of the other."  Id.   The joint trial resulted in substantial prejudice to

20   both defendants because their mutually exclusive defenses prevented the jury from determining the

21   "guilt or innocence of each defendant on an individual and independent basis." Id. at 1082.  The

22   Ninth Circuit held that the district court abused its discretion in refusing to sever, and  reversed both

23   defendants' convictions.

24        Here, severance of Mr. Ortega-Rocha's case from a joint trial is appropriate. Mr. Ortega-

25   Rocha was arrested at the same time and place as Mr. Minor-Olvera.  While Mr. Ortega-Rocha was

26   duped into driving the vehicle across the border by a clever Mr. Minor-Olvera, it is likely that Mr.

27   Minor-Olvera will claim that he is innocent and Mr. Ortega-Rocha is responsible for the offense.

28   It therefore appears that each defendant will present a defense that the other is the responsible party.

1   Under these circumstances, severance of the cases is appropriate to ensure that the jury can assess

2   the guilt or innocence of each defendant on an individual and independent basis.

3        **2.    Without Severance, Mr. Ortega-Rocha Will Have No Right to Call the Mr.**
         **Minor-Olvera To Testify**

4

5        A joint trial precludes Mr. Ortega-Rocha from being able to elicit any favorable testimony

6   from the co-defendant, Mr. Minor-Olvera.  Mr. Ortega-Rocha would have no right to call the co-

7   defendant as a witness, and might cause that co-defendant to invoke his Fifth Amendment privilege

8   in front of the jury.  U.S. v. Vigil, 561 F.2d 1316, 1318 (9th Cir. 1977).

9        At a separate trial, however, even if the co-defendant would not voluntarily testify, Mr.

10  Ortega-Rocha has a constitutional right to call him as a witness.  See Bruton v. United States, 391

11  U.S. 123, 126-27 (1968).  To ensure the invocation of this right, severance must be granted.

12  Severance to facilitate the testimony of a co-defendant is proper if the three- element test of Rule 14

13  is satisfied.  Under the test, a defendant must show that (1) the defendant would call the co-defendant

14  to the stand in the severed trial, (2) that the co-defendant would testify, and (3), that the testimony

15  would be favorable to the severing party.  United States v. Reese, 2 F.3d 870, 892 (9th Cir. 1993).

16  If the current cases were severed, Mr. Ortega-Rocha could call his co-defendant to testify.

17       If a co-defendant is called as a witness and refuses to answer questions based upon his Fifth

18  Amendment privilege against self-incrimination, Mr. Ortega-Rocha can seek to compel that

19  testimony by requesting immunity as to statements in court.  At that time, Mr. Ortega-Rocha could

20  seek an order requiring the government to grant use immunity to the co-defendant's testimony under

21  18 U.S.C. § 6003(b)(1).  Such use of this statute is compelled by the Sixth Amendment's guarantee

22  of compulsory process and by the Fifth Amendment's due process considerations of fairness.  See

23  United States v. Leonard, 494 F.2d 955, 985 n.79 (D.C. Cir. 1974) (Bazelon, J., concurring in part

24  and dissenting in part).

25       Even if statutory immunity is not appropriate, the Court can confer immunity independent

26  of the prosecutor's statutory power because Mr. Ortega-Rocha would be "prevented from presenting

27  exculpatory evidence which is crucial to his case" if the trial court did not confer immunity.

28  Government of the Virgin Islands v. Smith, 615 F.2d 964, 969-70 (3d Cir. 1980). See United States

1  v. Alessio, 528 F.2d 1079, 1082 (9th Cir. 1976).  Mr. Ortega-Rocha' rights to compulsory process

2  and to due process of law entitle him to a separate trial if Mr. Minor-Olvera refuses to testify at a

3  joint trial.

4      **3.    Without Severance, Mr. Ortega-Rocha' Sixth Amendment Confrontation and
            Cross-Examination Rights Are Nullified.**

5

6      The Sixth Amendment guarantees the accused the rights to confront and to cross-examine

7  witnesses against him.  Lilly v. Virginia, 527 U.S. 116, 123-24 (1999); Bruton v. United States, 391

8  U.S. 123, 126 (1968).  When the government seeks to introduce an accomplice's hearsay statements

9  against the accused, this Court must decide whether the Sixth Amendment permits the government

10 to dispense with the accused's usual guarantee of confrontation and cross-examination.  Lilly, 527

11 U.S. at 124.  This Court has the power to sever Mr. Ortega-Rocha' trial, and thus preserve his rights

12 of confrontation and cross-examination.  U.S. Const. amend VI; Fed. R. Crim. P. 14.

13     In Bruton v. United States, the Supreme Court held that the admission in a joint trial of a co-

14 defendant's confession, which implicated the defendant, violated the defendant's Sixth Amendment

15 right to confront and cross-examine when the co-defendant whose statement was introduced did not

16 testify. 391 U.S. at 126.  The Supreme Court has repeatedly reaffirmed the validity of Bruton's Sixth

17 Amendment analysis.  See, e.g., Richardson v. Marsh, 481 U.S. 200, 201-02 (1987) (holding that a

18 defendant has the right to move for severance when a co-defendant in a joint trial makes admissions

19 that implicate the defendant and the prosecution seeks to use such admissions).

20     Here, the government is likely to seek to introduce statements by the co-defendant that

21 mention Mr. Ortega-Rocha.  Any such statements made by the co-defendant are inadmissible

22 prejudicial hearsay and cannot be admitted at a joint trial where Mr. Ortega-Rocha has no

23 opportunity to cross-examine that statement.  Admission of such a statement in a joint trial violates

24 Mr. Ortega-Rocha's Sixth Amendment right to confront and cross-examine witnesses against him.

25     The Supreme Court has stated several times that " 'the naive assumption that prejudicial

26 effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated

27 fiction.' " Bruton, 391 U.S. at 129, quoting Krulewitch v. U.S., 336 U.S. 440, 453 (1949) (Jackson,

28 J., concurring).  The Court in Bruton held that instructing the jury to disregard the evidence was

1  inadequate to remedy the significant prejudice inherent in such evidence. Id. at 135-36.  The Court

2  reaffirmed this principle in Cruz v. New York, 481 U.S. 186, 192-93 (1987), holding that an

3  instruction to disregard such evidence is deficient when a co-defendant's confession, which directly

4  incriminates the defendant, is admitted into evidence without the co-defendant being compelled to

5  testify.  For this reason, counsel requests severance in this case.

6  **4.    Without Severance, the Jury May Find Mr. Ortega-Rocha Guilty by Association, Impinging on Mr. Ortega-Rocha's Due Process Rights.**

7

8  It is important to note that "[n]either mere association and activity with a co-conspirator nor

9  even knowledge of the conspiracy's existence . . . meets the standards [required] to link a defendant

10  to the conspiracy charge."  United States v. Peterson, 549 F.2d 654, 658 (9th Cir. 1977).  "Mere

11  association and activity with a co-conspirator does not meet the test."  United States v. Basurto, 497

12  F.2d 781, 793 (9th Cir. 1974) (citation omitted).  A jury ordinarily experiences great difficulty in

13  following admonishing instructions and in keeping separate evidence that is relevant only to

14  co-defendants.  In most cases,

15      [a] co-defendant in a conspiracy trial occupies an uneasy seat.  There generally will
16      be evidence of wrongdoing by somebody.  It is difficult for the individual to make
       his own case stand on its own merits in the minds of jurors who are ready to believe
17      that birds of a feather are flocked together.

18  Krulewitch v. United States, 336 U.S. 440, 454 (1949) (Jackson, J., Concurring).  If a jury cannot

19  compartmentalize the evidence that pertains to each defendant, the trial court runs the risk of

20  allowing a conviction based upon a defendant's association with incriminating evidence alone.

21  The jury cannot reasonably be expected to compartmentalize the evidence as it relates to Mr.

22  Ortega-Rocha alone.  Cf. United States v. DeRosa, 670 F.2d 889, 898-99 (9th Cir. 1982) (noting that

23  highly limited implicit connections between co-defendants may allow the jury to "easily

24  compartmentalize the evidence").  In this case, there is a considerable amount of evidence that

25  implicates Mr. Minor-Olvera as being responsible for the crime charged.  Most of this evidence

26  would probably be admissible against Mr. Minor-Olvera in his separate trial.  However, in a separate

27  trial of Mr. Ortega-Rocha, a jury would not be permitted to hear the prejudicial evidence pointing

28  towards Mr. Minor-Olvera's guilt.  Since Mr. Ortega-Rocha will likely be prejudiced by evidence

admissible only against his co-defendants, his rights can only be protected by severance of the two defendants.

## IV.

## THIS COURT SHOULD SUPPRESS EVIDENCE SEIZED IN VIOLATION OF THE FOURTH AMENDMENT.

The Fourth Amendment's prohibition of unreasonable searches and seizures extends to seizures of the person and brief investigatory stops of vehicles. See United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). An officer may not detain a motorist without "a particularized and objective bases for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-418 (1981). This "objective basis, or 'reasonable suspicion' must consist of 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Garcia-Camacho, 53 F.3d 244, 246 (9th Cir. 1995) (citations omitted); accord United States v. Sigmond-Ballesteros, 285 F.3d 1117, 1120 (9th Cir. 2002) (finding that district court erred in finding that vehicle stop was unconstitutional).

In the instant case, the arresting officer did not have reasonable suspicion to stop Mr. Ortega-Rocha and question him about smuggling activities. The arresting agent's alleged justification for the stop of the car rests almost entirely on observing the vehicle make a U-turn on Highway 80 and seeing an unidentified person running outdoors. Neither this nor any other supposed justification–including the alleged traffic violations– made by the arresting agent support the stop of the vehicle Mr. Ortega-Rocha was driving. Because the agents did not have reasonable suspicion to believe that he committed any offense, Mr. Ortega-Rocha's detention was unconstitutional.

Moreover, even if the government can prove that the initial detention of Mr. Ortega-Rocha was justified on the grounds of some alleged reasonable suspicion that a violation had occurred, the agents violated the Fourth Amendment warrant requirement when they searched the trunk of the vehicle Mr. Ortega-Rocha was driving without his consent. "The government must prove the existence of an exception to the Fourth Amendment Warrant Requirement by a preponderance of the evidence." United States v. Vasey, 834 F.2d 782, 785 (9th Cir. 1987). Although an officer may

1   inspect the passenger compartment of a vehicle as a search incident to a defendant's arrest, see New

2   York v. Belton, 453 U.S. 454, 460 (1981), such exception does not extend to the trunk of a vehicle.

3   See, e.g., United States v. Mayo, 394 F.3d 1271, 1277 n.12 (9th Cir. 2005) ("As in Belton, our ruling

4   does not extend to the trunk of a vehicle."). As Mr. Ortega-Rocha did not consent to the agents

5   searching the trunk of the vehicle, the search conducted by agents violated the Fourth Amendment.

6       As a consequence, all evidence and the fruits of the unconstitutional detention and search

7   (e.g., statements, all evidence) must be suppressed. See Wong Sun v. United States, 371 U.S. 471

8   (1963); see also United States v. Romero-Bustamante, 337 F.3d 1104 (9th Cir. 2003) (finding Fourth

9   Amendment violation, suppressing alien material witnesses, and requiring dismissal of indictment).

10  This Court should accordingly grant the motion.

11                                          **V.**

12              **MOTION TO DISMISS THE INDICTMENT DUE TO**
                **MISINSTRUCTION OF THE GRAND JURY**

13

14      Mr. Ortega-Rocha recognizes that his argument below has been rejected by an en banc court

15  of the Ninth Circuit. See United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc),

16  cert. denied, Navarro-Vargas v. United States, 126 S. Ct. 736 (2005). Mr. Ortega-Rocha nonetheless

17  raises it to preserve the issue.

18      Mr. Ortega-Rocha moves to dismiss the Indictment due to misinstruction of the Grand Jury.

19  Mr. Ortega-Rocha's arguments are essentially those set out in Judge Hawkins' dissent in United

20  States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), cert. denied, 1538 U.S. 934 (2003), Judge

21  Kozinski's dissent in United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004), opinion

22  vacated by United States v. Navarro-Vargas, 367 F.3d 920 (9th Cir. 2004), and Judge Hawkins'

23  dissent in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc). Ms. Ortega-

24  Rocha incorporates those arguments by reference. However, if the Court would like further briefing

25  on this issue, Mr. Ortega-Rocha is willing to provide it.

26  //

27  //

28  //

                                        14                          07CR3054-IEG

## VI.

## LEAVE TO FILE FURTHER MOTIONS

Mr. Ortega-Rocha and defense counsel have received only limited discovery in this case. As new information surfaces – via further discovery provided by government, defense investigation, or an order of this court – the defense may need to file further motions, or to supplement existing motions. For this reason, defense counsel requests leave to file further motions.

## VII.

## CONCLUSION

For the reasons stated, Mr. Ortega-Rocha requests that this Court grant his motions.


Respectfully submitted,


/s/ Joseph M. McMullen
Dated: December 27, 2007        **JOSEPH M. McMULLEN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Ortega-Rocha

1

2

## CERTIFICATE OF SERVICE

3    Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best

4    of his information and belief, and that a copy of the foregoing document has been served this day

5    upon:

6    **Christopher M. Alexander**

7    Christopher.M.Alexander@usdoj.gov; efile.dkt.gc1@usdoj.gov

8

9    Dated: December 27, 2007                    _/s/ Joseph McMullen_____
      JOSEPH McMULLEN

10    Federal Defenders of San Diego, Inc.
      225 Broadway, Suite 900

11    San Diego, CA 92101-5030
      (619) 234-8467  (tel)

12    (619) 687-2666  (fax)
      e-mail: Joseph_McMullen@fd.org

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28